UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOUISIANA COMMERCE AND TRADE
ASSOCIATION SELF INSURERS FUND

CIVIL ACTION

VERSUS

NO. 13-773-JJB-RLB

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

**<u>RULING</u>**

This matter is before the court on cross motions for summary judgment. The first is a

Motion for Partial Summary Judgment (Doc. 19) brought by the plaintiff, Louisiana Commerce

and Trade Association Self Insurers Fund ("LCTA") on a number of its claims against the

defendant, National Union Fire Insurance Company of Louisiana ("National Union"), as well as

a motion for summary judgment on National Union's counterclaim. The second is a Motion for

Summary Judgment (Doc. 20) brought by National Union against LCTA on the main claim for

liability, as well as summary judgment on its counterclaim. Both LCTA and National Union filed

oppositions to the respective motions (Docs. 23 & 24). For the reasons stated herein, LCTA's

Motion for Partial Summary Judgment (Doc. 19) is **GRANTED**. Accordingly, National Union's

Motion for Summary Judgment (Doc. 20) is **DENIED**.


**I.**   **Background**

This case involves a dispute between two insurance companies over the limits of liability

resulting from the settlement of an intentional tort case.

LCTA is a group self-insurance fund providing indemnity for statutory workers'

compensation benefits and employers liability. LCTA issued such coverage to Gee Cee Group,

Inc. and Gee Cee Enterprises ("Gee Cee"). For the same policy period, LCTA's reinsurer, National Union, issued an excess workers' compensation and employers' liability policy ("National Union/LCTA Policy").

In March of 1998, Courtney Thomas ("Thomas") sustained serious injuries when he fell from scaffolding during the course and scope of his employment with Gee Cee. Thomas alleged that his injuries were the result of an intentional tort of a co-employee. Thomas filed a workers' compensation claim and a claim for intentional tort damages against Gee Cee.[1]

With final approval from National Union, LCTA settled the intentional tort claim in 2012 for $1.3 million. Before agreeing to settle the case, LCTA and National Union considered the potential liability, in excess of policy limits, for legal interest for any judgment rendered on the intentional tort claim. Such consideration was taken into account in reaching the $1.3 million settlement amount.

After settling the intentional tort action with Gee Cee and Thomas, LCTA filed a proof of claim with National Union for $1 million, which represented the policy limits of the National Union/LCTA Policy. National Union paid $800,000 on the claim, but refused to tender the remaining $200,000. National Union now claims it does not owe LCTA $200,000 but actually overpaid by $300,000 because it was only obligated to pay $500,000, the policy limit in the LCTA/Gee Cee Policy.

---

[1] Benefits continue to be paid on the workers' compensation claim, and National Union does not dispute the reimbursement of those amounts in excess of the Primary Retention.

LCTA originally filed suit against National Union in state court, seeking payment in connection with the National Union/LCTA Policy between LCTA and National Union. *Pet.*, Doc. 1-1. National Union removed the matter to this Court, and filed a counterclaim against LCTA, seeking the return or set-off against other obligations in the amount of $300,000 that National Union claims it erroneously overpaid to LCTA under the National Union/LCTA Policy. *Notice of Removal*, Doc. 1; *Df.'s Countercl.*, Doc. 6.

LCTA filed the current motion for summary judgment, contending that there are no genuine issues of material fact and that as a matter of law it is entitled to judgment in its favor in the amount of $200,000. LCTA contends that it is entitled to an additional statutory penalty of $100,000, and further for an award of attorney fees pursuant to La. R.S. 22:1892 due to National Union's allegedly arbitrary and capricious failure to reimburse LCTA pursuant to the National Union/LCTA Policy. Finally, LCTA argues that it is entitled to judgment in its favor dismissing the counterclaim against it with prejudice.

## II.     Insurance Policies

In this case there are two relevant contracts, the contract between LCTA and Gee Cee ("LCTA/Gee Cee Policy") and the contract between LCTA and National Union ("National Union/LCTA Policy").

### A.     LCTA/Gee Cee Policy

The LCTA/Gee Cee Policy has two parts. Under Part One, LCTA agreed to indemnify Gee Cee for workers' compensation losses. There is no coverage limit under Part One, as Louisiana law states that workers' compensation coverage must be for the employer's entire

obligation for workers' compensation benefits. *See* La. R.S. 23:1021 *et seq.* Part Two of the

National Union/LCTA Policy covers Employers Liability and obligates LCTA to pay "all sums

[Gee Cee] legally must pay as damages because of a bodily injury to [Gee Cee's] employees."

*LCTA/Gee Cee Policy* 2, Doc. 20-6. Part Two also contains a supplementary payment provision,

which states:

> **E. [LCTA] WILL ALSO PAY**
>
> Louisiana Commerce and Trade Association Self Insurers Fund will also pay these costs as part of any claim, proceeding or suit they defend (these costs shall be inclusive within the applicable limit of liability and reduce the applicable limit of liability rather than be in addition to the applicable limit of liability[2]):
>
> 1. Reasonable expenses incurred at [LCTA's] request, but no loss of earnings;
> 2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the applicable limit of liability under this Insurance;
> 3. Litigation costs taxed against you;
> 4. Interest on a Judgment as required by law until we offer the amount due under this insurance; and
> 5. Expenses [LCTA] incurs.

*Id.* at 3.

Additionally, Part Two provides a limit on LCTA's liability to Gee Cee. This provision

provides:

> **G. LIMITS OF LIABILITY**
>
> [LCTA's] liability to pay is limited. Limits of liability are shown on each member's individual application on file at the offices of Louisiana Commerce & Trade Association Self Insurers Fund.

---

[2] While the language within the parentheses purports to reduce the coverage's limit of liability by deducting interest obligations on a judgment, such a provision is against public policy and invalid under Louisiana law. Thus, contrary to the language in the policy, should LCTA pay interest on a judgment it is unable to deduct the amount paid from the applicable policy limit.

4

1. Bodily Injury by Accident: The limit shown for "Bodily Injury by Accident-Each Accident" is the most LCTA will pay for all damages covered by this insurance because of bodily injury to one or more employees in one accident.

* * *

3. [LCTA] will not pay any claims for damages after [LCTA] has paid the applicable limit of liability under this insurance.

*Id.* at 3. The Information Page of the LCTA/Gee Cee Policy sets the "applicable limit of liability under this insurance" at $500,000 for each accident. *See LCTA/Gee Cee Policy*, Doc. 20-5.

### B.   National Union/LCTA Policy

Similar to the LCTA/Gee Cee Policy, the National Union/LCTA Policy has two parts—Part One covers Workers' Compensation while Part Two covers Employers Liability. Under the terms of the National Union/LCTA Policy, National Union is obligated to indemnify LCTA for "loss covered under Part One or Part Two paid by you in excess of your Primary Retention." *National Union/LCTA Policy* 1, Doc. 20-4. For each accident, LCTA is required to pay a Primary Retention of $250,000, which applies to the combined loss paid under Part One and Part Two of the National Union/LCTA Policy. *Id.* The National Union/LCTA Policy states that National Union's obligations under "Part One-Workers Compensation" are "STATUTORY," meaning there are no limits to National Union's obligation to provide workers' compensation coverage in excess of the $250,000 Primary Retention. *Id.* Under "Part Two-Employers Liability," however, the National Union/LCTA Policy limits National Union's obligation to LCTA to $1 million. *Id.*

The National Union/LCTA Policy defines "loss" as "the amount actually paid by you for damages imposed upon by law." *Id.* at 4. "Loss" is further defined to include: "(1) the amount

5

paid by you in settlement of claims for legal damages; (2) the amount paid by you in satisfaction of awards or judgments for damages; and (3) court costs, interest upon awards and judgments, and allocated loss expense." *Id.*

In sum, according to the National Union/LCTA Policy, National Union agreed to indemnify LCTA for workers' compensation and employers liability losses in excess of LCTA's Primary Retention amount of $250,000. For each accident LCTA is responsible for the first $250,000. Meanwhile National Union is responsible for all amounts of workers' compensation benefits over $250,000, together with up to $1 million of payments on any employers liability claim arising out of the same accident.[3]

## III. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment

---

[3] Benefits continue to be paid on the workers' compensation claim, the limit of which is statutory, and National Union does not dispute the reimbursement of those amounts in excess of the Primary Retention. *Df.'s Supp. Mem.* 6, Doc. 20-1.

position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir 1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322–23.

## B.    Liability Under the National Union/LCTA Policy

Interpretation of an insurance contract is a question of law. *Minor v. Cas. Exch.*, 700 So.2d 951, 953 (La. Ct. App. 1997). An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Edwards v. Daugherty*, 883 So.2d 932, 941–42 (La. 2004) (citations omitted). The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. *See* La. Civ. Code art. 2045; *Edwards*, 883 So.2d at 941–42. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ. Code art. 2047; *Edwards*, 883 So.2d at 941–42. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Edwards*, 883 So.2d at 941–42. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in

7

unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law. *Id.*

The words and phrases of the National Union/LCTA Policy are clear and unambiguous. The National Union/LCTA Policy obligates National Union to reimburse LCTA for "loss covered under Part One or Part Two paid by [LCTA] in excess of [LCTA's] Primary Retention," up to the policy limit of $1 million for losses covered under Part Two. The National Union/LCTA Policy's definition of "loss" under Part Two is equally unambiguous. The terms of the National Union/LCTA Policy provide a specific example of "loss" as, "the amount paid by you in settlement of claims for legal damages." *National Union/LCTA Policy* 4, Doc. 20-4. According to the "plain, ordinary, and generally prevailing meaning" of the phrase "the amount paid by you in settlement," LCTA paid a "settlement of claims for legal damages" when it settled Thomas' intentional tort claim for $1.3 million. Accordingly, the amount paid by LCTA in settlement of a claim for legal damages—$1.3 million—was "loss covered under Part Two." Therefore, according to the clear and unambiguous language of the National Union/LCTA Policy, National Union is obligated to reimburse LCTA for the amount in excess of the Primary Retention, up to the policy limit of $1 million.

Finding that the contract language is clear and unambiguous, this Court lacks the authority "to alter the terms of insurance contracts under the guise of contractual interpretation." *Edwards*, 883 So.2d at 941–42. Nevertheless, National Union makes two arguments as to why it is not obligated to pay up to the policy limits contained in the National Union/LCTA Policy. The Court addresses each of these arguments in turn.

First, National Union argues that it is a reinsurer. National Union argues that as a reinsurer, National Union's liability to LCTA can be no more than LCTA's liability on the LCTA/Gee Cee Policy—i.e. $500,000. *Def's. Supp. Mem.* 6, Doc. 20-1. According to National Union, it agreed to indemnify LCTA for "loss covered" in the underlying LCTA/Gee Cee Policy. Thus, because the LCTA/Gee Cee Policy limits employers liability coverage to $500,000, National Union's obligation is likewise limited to $500,000 on the claim. Even though LCTA was only obligated to pay $500,000 under its policy with Gee Cee, "LCTA for some reason paid the entire amount of the settlement." *Id.* at 4–5, Doc. 20-1. "To the extent LCTA chose to pay in excess of the amount it owed under its policy to Gee Cee, it did so as a volunteer, and its additional payment could not obligate National Union to reimburse it for money that it paid outside of its contract." *Id.* at 7. By paying $800,000 on the claim, National Union argues that it satisfied its $500,000 obligation to LCTA, and actually overpaid its obligation to LCTA by $300,000.[4]

This argument is unpersuasive, however, because the terms of the National Union/LCTA Policy are clear and unambiguous. As discussed above, the National Union/LCTA Policy states clearly that National Union will pay up to the applicable policy limits for amounts paid in settlement. National Union did not cite or direct the Court to any language in the National Union/LCTA Policy that limits National Union's obligations to those obligations imposed in the

---

[4] National Union argued that during settlement negotiations, the extent of its obligation was unclear because LCTA could not provide National Union's claim representative, Gerard Fitzpatrick ("Fitzpatrick"), with a copy of the LCTA/Gee Cee Policy. *Df.'s Opp'n Mem.* 3, Doc. 23. However, National Union has since confirmed that LCTA/Gee Cee Policy was provided to Fitzpatrick via email on October 17, 2012—two weeks prior to the conclusion of settlement negotiations. Regardless, the issues presented in the currently pending competing Motions for Summary Judgment principally involve legal issues and do not depend on when National Union received the LCTA/Gee Cee Policy declarations page. Therefore, the defendant's Motion to Substitute Affidavit of Gerard Fitzpatrick (Doc. 27) is **GRANTED**.

LCTA/Gee Cee Policy.[5] Thus, following National Union's interpretation would require the Court to ignore the clear and unambiguous language contained within the four corners of the National Union/LCTA Policy under the guise of contractual interpretation. Moreover, as is discussed more fully below, the $500,000 limit contained in the LCTA/Gee Cee Policy is unenforceable as it applies to legal interest. *See, e.g.*, *Edwards v. Daugherty*, 883 So.2d 932, 947 (La. 2004). Thus, even if National Union/LCTA Policy were limited by "loss covered" within the LCTA/Gee Cee Policy, National Union's risk included any obligations imposed for legal interest above $500,000.

Second, National Union argues that when the two policies are read together, National Union agreed to reinsure LCTA only for "losses covered" under the separate LCTA/Gee Cee Policy. According to National Union, National Union's obligation is limited by the language in the supplementary payment provision in the LCTA/Gee Cee Policy, which obligates LCTA to pay Gee Cee for "[i]nterest on a Judgment as required by law . . . ." *Df.'s Opp'n Mem.* 4–6, Doc. 23. According to National Union, the "loss" that it covered only includes LCTA's payments for settlements that consider "interest on a *Judgment* as required by law." *Id.* (emphasis added). Because the payment was made in settlement—prior to a trial and a final judgment—it is not obligated to reimburse LCTA for payments made in consideration of legal interest because no judgment had been entered. Therefore, according to National Union, the settlement at issue which considered legal interest is not part of the "loss covered under Part One or Part Two." *Id.*

---

[5] The Court makes no finding as to whether the policy at issue here is a reinsurance or an excess insurance contract. The Court notes, however, the frequent use of the phrase "excess insurance" throughout the policy, and the policy's title, "*EXCESS* WORKERS COMPENSATION AND EMPLOYERS LIABILITY INDEMNITY POLICY." *National Union/LCTA Policy*, Doc. 20-4 (emphasis added).

The Court finds this argument unpersuasive. The National Union/LCTA Policy specifically covered "amounts paid by [LCTA] in settlement of claims for legal damages" without any language limiting that obligation to certain factors considered by LCTA in settlement negotiations, such as legal interest. *National Union/LCTA Policy* 4, Doc. 20-4. Thus, even if National Union did not have knowledge of the basis for the settlement, the National Union/LCTA Policy unambiguously obligates National Union to pay its full $1 million limits.

Moreover, National Union's argument ignores the straightforward application of Louisiana law regarding pre-judgment interest. A settlement made in consideration of legal interest qualifies as a settlement of "claims for legal damages." As a matter of public policy, Louisiana law requires tortfeasors to pay pre-judgment interest from the date of judicial demand. La. R.S. 13:4203. Any attempts to limit the obligation for judicial interest are unenforceable. *See, e.g.*, *Edwards v. Daugherty*, 883 So.2d 932, 947 (La. 2004). Thus, to the extent that National Union argues that the language in either policy only allows for payment of post-judgment interest—whether in the LCTA/Gee Cee Policy or in the National Union/LCTA Policy—that language would be void under Louisiana law.

Therefore, the Court finds that there is no genuine issue of material fact, and that LCTA is entitled to judgment as a matter of law in the amount of $200,000. This $200,000 figure represents the $1 million dollar policy limit less the $800,000 already paid by National Union. Accordingly, LCTA's Motion for Partial Summary Judgment (Doc. 19) on its claim for recovery of the balance of the policy proceeds will be **GRANTED**, and National Union's Motion for Summary Judgment (Doc. 20) will be **DENIED**.

11

C.       "Bad Faith" Damages under La. R.S. 22:1892

According to LCTA, under the circumstances of this case National Union's failure to pay the $1 million dollar policy limits in the National Union/LCTA Policy is arbitrary, capricious, and without probable cause. Specifically, LCTA claims that National Union's arguments for not paying—that National Union's obligation to reimburse was limited to the policy limits in the LCTA/Gee Cee Policy without regard for any legal interest from the date of judicial demand— was arbitrary, capricious, and without probable cause. Accordingly, LCTA claims that it is entitled to a statutory penalty provided under La. R.S. 22:1892 in the amount of $100,000, along with appropriate attorney's fees.

National Union does not raise a factual dispute, nor does it argue that LCTA is not entitled to judgment as a matter of law on this claim. Rather, National Union asserts that it was not given adequate notice of the claim under La. R.S. 22:1892.

1.       Notice of the Claim

As a threshold matter, National Union asserts that there is no valid claim for arbitrary and capricious breach of contract pursuant to La. R.S. 22:1892 because the claim is not specified nor is there a citation to La. R.S. 22:1892 in the petition filed in state court. *Df.'s Opp'n Mem.* 6, Doc. 23 (stating that La. R.S. 22:1973 was expressly cited in the petition, while La. R.S. 22:1892 was omitted). National Union points out that any motion to amend would be untimely under the current scheduling order. *Id.* at 6 (citing *Scheduling Order* 1–3, Doc. 5).

LCTA argues that it need not amend its complaint, as fair notice of the claim was given in the petition because the petition delineates two separate and distinct claims for statutory

penalties. Moreover, LCTA argues, the petition contains a specific allegation that the facts of this case constitute an arbitrary and capricious breach of contract entitling LCTA to statutory interest, penalties and reasonable attorney's fees, and the petition goes on to state in a separate paragraph that statutory interest penalties and attorney's fees are sought pursuant to La. R.S. 22:1973.

The Federal Rules of Civil Procedure utilize a "simplified notice pleading standard" that "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 585 (2007). The complaint need not specify in exact detail every possible theory of recovery, so long as the complaint gives fair notice of the claims to the defendant. *Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 577 (M.D. La. 2007); *Colle v. Brazos County*, 981 F.2d 237, 243 (5th Cir.1993) ("A plaintiff's complaint ordinarily need only be a short and plain statement that gives the defendant notice of what the claim is and the grounds upon which it rests."). Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Louisiana employs a pleading system "based upon the narration of factual allegations." *Emigh v. W. Calcasieu Cameron Hosp.*, 145 So.3d 369, 372 (La. 2014) (quoting *Greemon v. City of Bossier City*, 65 So.3d 1263, 1268 (La. 2011)). "No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs." *See* La. CCP art. 854. Louisiana does not require that the petition contain a specific citation to statutory authority in order for a plaintiff to be entitled to relief. *See* La. CCP art. 862 ("Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party

13

has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.") Like the Federal Rules of Civil Procedure, in Louisiana a petition must "contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation." La. CCP art. 891.

The Court agrees with LCTA that the facts alleged in the petition were sufficient to put National Union on notice of this claim according to both the Federal Rules of Civil Procedure's notice pleading standard as well as Louisiana's fact pleading standard. The two statutes at issue here support distinct causes of action. *Durio v. Horace Mann Ins. Co.*, 74 So.3d 1159, 1170 (La. 2011) (stating that La. R.S. 22:1892 refers to a breach of the insurance contract, while La. R.S. 22:1973 refers to a breach of the duty of good faith and fair dealing). The petition filed in state court delineates facts in two separate paragraphs. In one paragraph, the petition states that LCTA is "entitled to judgment against [National Union] for the full amount of $200,000, as well as statutory interest, penalties and reasonable attorney's fees." *Pet.* 1, Doc. 1-1 In a separate paragraph, the petition states that LCTA is entitled to statutory interest penalties and reasonable attorney's fees in accordance with La. R.S. 22:1973. *Id.* Considering that LCTA was not required to specify both statutes in the petition, these factual allegations would support a claim under either statutory penalty provision. Accordingly, the Court finds that the petition contained sufficient factual allegations to put National Union on notice of LCTA's claim under La. R.S. 22:1892.

14

### 2.   Summary Judgment

LCTA argues that there is no genuine issue of material fact that National Union acted in bad faith and in an arbitrary and capricious manner, thereby entitling LCTA to an additional $100,000, along with attorney's fees pursuant, to La. R.S. 22:1892. As discussed above, National Union does not cite to anything in the record that would create a genuine issue of material fact. Thus, the Court evaluates whether LCTA is entitled to judgment as a matter of law.

La. R.S. 22:1892 provides that an insured is entitled to penalties if the insurer fails to pay a claim within thirty days after satisfactory proof of loss, and that failure is found to be arbitrary, capricious, and without probable cause. *Durio v. Horace Mann Ins. Co.*, 74 So.3d 1159, 1170 (La. 2011). La. R.S. 22:1892 provides in pertinent part:

> A.(1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

> * * *

> B.(1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . as provided in Paragraphs (A)(1) . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, *or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs . . . .*

15

(emphasis added).[6]

The determination of whether an insurer acted arbitrarily, capriciously, and without probable cause turns on the facts and circumstances of each case. *Maloney Cinque, L.L.C. v. Pac. Ins. Co.*, 89 So.3d 12, 22 (La. Ct. App. 2012). An insurer's conduct is "arbitrary, capricious, or without probable cause" when an "insurer whose willful refusal of a claim is not based on a good-faith defense." *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008) (citations omitted). When there are "substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause." *Id.*

The Court finds that under the circumstances presented in this case, National Union's failure to pay the full amount of the policy was not based on a good-faith defense, and there are no substantial, reasonable, or legitimate questions as to the extent of National Union's liability or LCTA's loss.

First, as discussed above, the National Union/LCTA Policy is clear and unambiguous. The National Union/LCTA Policy clearly and unambiguously obligates National Union to reimburse LCTA for amounts paid in settlement up to the policy limit of $1 million.

Second, National Union's argument that it could not be liable for legal interest unless and until a judgment would be rendered ignores the potential of pre-judgment interest. Louisiana law

---

[6] There is no genuine dispute that National Union has failed to pay the full amount of LCTA's claim. It is also undisputed that LCTA is the insured under the National Union/LCTA Policy. LCTA made an adequate proof of loss to National Union, and National Union did not make payment of the full amount due—$1 million—within the 30 day time period. Instead, National Union paid $800,000 dollars on the claim, leaving a balance of $200,000.

clearly establishes that legal interest runs from the plaintiff's first judicial claim against any party responsible for a single tortious act. *Edwards v. Daugherty*, 883 So.2d 932, 947 (La. 2004). Moreover, as a matter of public policy, Louisiana law requires tortfeasors to pay pre-judgment interest from the date of judicial demand. La. R.S. 13:4203. Any attempts to limit the obligation for judicial interest, including applicable policy limits, are unenforceable. *See, e.g.*, *Edwards v. Daugherty*, 883 So.2d 932, 947 (La. 2004). Accordingly, any limit on pre-judgment interest— whether in the LCTA/Gee Cee Policy or in the National Union/LCTA Policy—is void under Louisiana law. The underlying tort claim was initiated in April of 1999, while the settlement discussions were occurring over 13 years later in October of 2012. Louisiana law obligated LCTA to pay judicial interest from the date of judicial demand—above any limits contained in the LCTA/Gee Cee Policy. LCTA and National Union's representatives knew this amount would be significant given the duration of the claim. *See E-mail from Heather Blackburn to Martha Ronsonet-Louiviere* 4–6 (October 13, 2012), Doc. 19-14. Thus, National Union's argument for its non-payment is not based on a good-faith defense.

Third, National Union's arguments for its failure to pay the policy limits are arbitrary and capricious as demonstrated by its correspondence during settlement negotiations with defense counsel in the underlying tort claim. National Union's representatives knew that the potential for judicial interest was significant, and that LCTA would be required to pay judicial interest. *See E-mail from Heather Blackburn to Martha Ronsonet-Louiviere* 4–6 (October 13, 2012), Doc. 19-14; *E-mail from Heather Blackburn to Gerard Fitzpatrick* (Oct. 31, 2012, 1:37 PM), Doc. 19-17 ("Please note that LCTA has potential exposure for both the limits of its policy and legal interest of about 85% of any judgment."). National Union's representatives were privy to correspondence

17

and discussions and gave final approval to settle the underlying tort case.[7] To represent to this Court that LCTA simply chose to pay more than the policy limits voluntarily without any basis, is inaccurate and not warranted by the circumstances presented in this case.

Given the clear and unambiguous language of the National Union/LCTA Policy obligating National Union to reimburse for amounts paid in settlement by LCTA, National Union's awareness of the duty to pay legal interest on the Thomas suit, and the settlement negotiations and final approval of the settlement, the Court finds that National Union's failure to tender the full policy limits is arbitrary, capricious, and without probable cause. Accordingly, LCTA's Motion for Partial Summary Judgment (Doc. 19) on its claim for statutory penalties, reasonable attorney's fees, and costs pursuant to La. R.S. 22:1892 is **GRANTED**. Therefore, the Court finds as a matter of law that LCTA is entitled to $100,000 plus reasonable attorney's fees and costs. This $100,000 figure represents fifty percent of the $200,000 difference between the amount paid or tendered ($800,000) and the amount found by this Court to be due under the policy ($1,000,000).

---

[7] On August 28, 2012, counsel defending the underlying tort suit, Heather Blackburn, submitted a detailed and comprehensive report concerning the potential exposure on the claim, explaining that the exposure exceeded the $500,000 policy limits. *See E-mail from Heather Blackburn to Martha Ronsonet-Louviere* (August 28, 2012), Doc. 19-13. Later, in the course of settlement negotiations, Heather Blackburn sent an email to National Union's representatives explaining that LCTA would be liable—based on the same supplementary payment provision in the LCTA/Gee Cee Policy that National Union now argues does not apply—for "interest on a judgment as required by law." *See E-mail from Heather Blackburn to Martha Ronsonet-Louviere* 4–6 (Oct. 13, 2012), Doc. 19-14. In the letter, defense counsel reported on the status of settlement negotiations and further evaluations concerning exposure, including legal interest on any judgment rendered, possible issues concerning whether or not LCTASIF's limits could be asserted in the absence of a reservation of rights, the duty to settle, and the potential for liability in excess of limits in the event duties to the insured member were breached. *See id.* National Union representatives were aware of this potential liability and gave the final authority to settle the underlying tort claim after having "carefully weighed the alternatives." *See E-mail from Craig Barlow to Heather Blackburn* (Nov. 2, 2012, 12:00 PM), Doc. 19-19.

**D.      Damages under La. R.S. 22:1973**

In its opposition to LCTA's Motion for Partial Summary Judgment, National Union argues that LCTA is not entitled to judgment under La. R.S. 22:1973. *Df.'s Opp'n Mem.* 6–9. Doc. 23. However, LCTA did not seek summary judgment on its claim for bad faith damages under La. R.S. 22:1973 "because a claim for damages under [this statute] would present a factual question." *Pl.'s Supp. Mem.* 5 n.4, Doc. 19-2. Also, the claims under La. R.S. 22:1892 and 22:1973 are separate and distinct causes of action and each statute uses a different measure of damages. *Durio v. Horace Mann Ins. Co.*, 74 So.3d 1159, 1170–72 (La. 2011). Accordingly, the Court makes no finding or ruling on this claim at this time.

**IV.    Conclusion**

There is no genuine issue of material fact and LCTA is entitled to judgment as a matter of law in the amount of $200,000. Accordingly, LCTA's Motion for Partial Summary Judgment (Doc. 19) on its claim for recovery of the balance of the policy proceeds is **GRANTED**, and National Union's Motion for Summary Judgment (Doc. 20) is **DENIED**.

There is no genuine issue of material fact and LCTA is entitled to judgment as a matter of law in the amount of $100,000, plus reasonable attorney's fees and costs pursuant to La. R.S. 22:1892. Accordingly, LCTA's Motion for Partial Summary Judgment (Doc. 19) on its claim for statutory penalties, reasonable attorney's fees, and costs pursuant to La. R.S. 22:1892 is **GRANTED**.

LCTA's claim for bad faith damages under La. R.S. 22:1973 remains for trial.

Additionally, the defendant's Motion to Substitute Affidavit of Gerard Fitzpatrick (Doc. 27) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on November 3, 2015.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**